No. A-CV-20-89
# Supreme Court of the Navajo Nation

## In Re: Mary Ellis Joe Customary Use Area
### Decided March 22, 1990

## OPINION

Before TSO, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

Lawrence A. Ruzow, Esq., Window Rock, Arizona, for the Appellant; and Damon L. Weems, Esq., Farmington, New Mexico, for the Appellees.

Opinion delivered by Bluehouse, Associate Justice.

In this case the district court decided it had no jurisdiction to review a decision deciding a land dispute filed by the Resources Committee of the Navajo Tribal Council. Two issues are on appeal: (1) whether a decision of the Resources Committee of the Navajo Tribal Council deciding a land dispute is appealable to the district court; and (2) whether the procedures used by the District 9 Grazing Committee and the Resources Committee of the Navajo Tribal Council denied the appellant due process of law. The appeal can be decided using only the first issue.

I

On March 9, 1982, counsel for Mary Ellis Joe (appellant) sent a letter to the Chairman of the District 9 Grazing Committee notifying the chairman of competing claims to grazing land claimed by appellant as her customary use area. Appellant requested that the matter be placed on the Committee's meeting agenda with notice to all parties claiming an interest in the land. On March 23, 1982, appellant was notified that the land dispute had been placed on the Grazing Committee's meeting agenda for May 13, 1982. On June 29, 1982, the appellant was notified that the Grazing Committee had reviewed the appellant's claim but no decision on the land dispute had been reached. In fact, no decision was made by the Grazing Committee prior to appellant's suit.

On November 10, 1983, the appellant filed a quiet title suit in the Shiprock District Court citing the Grazing Committee's failure to reach a decision. On December 9, 1983, parties (defendants) claiming interests in the disputed land filed an answer to the petition. On December 27, 1983, the defendants filed a motion to dismiss alleging that the appellant had failed to exhaust her administrative remedies. On April 4, 1984, the court referred the case to the District 9 Grazing Committee to satisfy the exhaustion requirement. On August 24, 1984,

the Grazing Committee entered a decision: "Our decision is for the disputees to live in harmony and peace as before; to help one another without any animosity between the neighbors."

The Grazing Committee's decision decided nothing, so on February 15, 1985, the court referred the case to the Resources Committee of the Navajo Tribal Council for its decision. The Resources Committee held a hearing but never decided the land dispute. The court again referred the matter to the newly appointed Resources Committee on March 27, 1987. Finally, on September 9, 1988, the Resources Committee entered its final decision holding that the appellant had "no claim to any area beyond the area authorized by her grazing permit."

The appellant then requested judicial review of the final Resources Committee decision. On May 24, 1989, the district court denied judicial review by holding that it had no jurisdiction to review a decision of the Resources Committee. The district court used the tests for judicial review of administrative decisions established by this Court in *Navajo Skill Center v. Benally*, 5 Nav. R. 93 (1986), to arrive at its decision. The appellant then filed this appeal on June 19, 1989, challenging the district court's decision.

## II

The question of whether parties to a land dispute case must first exhaust their administrative remedies before the Resources Committee and district grazing committee was examined in *Brewster v. Bee*, 1 Nav. R. 128 (1977). Although the Court recognized that normally a land disputant must first exhaust administrative remedies, it held that a party need not wait more than 60 days for a district grazing committee and the Resources Committee to make a decision. The Court held as follows:

> Here we need only to rule that waiting six months with no action taken by the appropriate administrative agency [grazing committee] to settle the dispute presented to them is sufficient 'exhaustion of administrative remedies.' We go further and hold that if the District Grazing Committee and Resources (Central) Committee fail to act within sixty days on a dispute properly presented to them, such failure shall be deemed conclusive evidence that the plaintiff has exhausted his administrative remedies.

*Brewster*, 1 Nav. R. at 130-131.

At the time *Brewster* was decided, exhaustion of remedies before the district grazing committee, and subsequently before the Resources Committee, was a requirement. Exhaustion of remedies before the district grazing committee consisted of mediation in an attempt to settle the land dispute. The duty of a district grazing committee in land dispute matters is set forth at 3 N.T.C. § 878 (7) (1957):

> Serve as mediators in adjusting and settling range difficulties between parties and groups within their respective districts. In serving as mediators, the District Grazing Committee will hear both sides of a dispute and attempt to get the two parties or groups to agree to a mutual settlement of differences within the terms

of the Navajo Grazing Regulations. The Grazing Committee in serving as mediator is not to assume the role of judge and jury. Difficult cases not settled in the above manner are to be referred to the Central Grazing Committee through the Tribal Resources Committee in an attempt to settle differences out of court.

This law controlled at the time *Brewster* was decided and it remains the law today. The law is clear - a district grazing committee has no authority to decide a land dispute. Its only responsibility is to serve as a mediator in a land dispute in an attempt to have the parties agree to a mutual settlement. A district grazing committee is not to act as a judge or jury; a role that requires a decision. 3 N.T.C. § 878 (7) (1957).

We next examine the authority of the Resources Committee to decide land disputes at the time *Brewster* was decided and as it exists today. When *Brewster* was decided the Resources Committee's responsibilities were distributed among three subcommittees. Matters pertaining to land disputes were the responsibility of the Range and Livestock Subcommittee. That subcommittee's responsibility came from 2 N.T.C. § 693 (b) (3) (repealed 1984):

Range and Livestock Subcommittee: matters pertaining to grazing, land, and ranches. In particular, this subcommittee may provide an initial administrative decision to resolve disputes concerning land boundaries and grazing rights. Such decision shall be appealable to the Navajo Tribal Courts.

No doubt, at the time *Brewster* was decided, the Resources Committee had authority to decide land disputes, which decisions were appealable to the courts. The Court in *Brewster*, therefore, had to recognize that a party must first exhaust remedies before the Resources Committee. The problem with requiring absolute exhaustion of remedies, of course, was the long time it took for the Resources Committee to render a decision in land dispute cases. Many times, the Resources Committee simply never bothered to make a decision. These same problems have plagued appellant's case from the outset.

Perhaps in response to delays caused by the Resources Committee in arriving at a land dispute decision, the Advisory Committee of the Navajo Tribal Council repealed all of section 693, thereby eliminating the Resources Committee's power to decide land disputes. Advisory Committee Res. ACMA-35-84 (March 14, 1984). Since 1984, the Resources Committee's authority in this area has been limited to the following: "To act as the Central Grazing Committee with oversight authority over all grazing matters within the Navajo Nation." 2 N.T.C. § 695 (1) (1984). Possessing oversight authority over grazing matters does not give the Resources Committee jurisdiction to decide land disputes. Instead, this oversight authority narrows the Resources Committee's duty to establishing policies beneficial to grazing permittees within the Navajo Nation.

The appellant began her case in March, 1982 before the District 9 Grazing Committee. The District 9 Grazing Committee, however, failed to mediate the land dispute in accordance with 3 N.T.C. § 878 (7). The District 9 Grazing

Committee should have immediately referred the land dispute to the Resources Committee for decision if mediation proved fruitless. 3 N.T.C. § 878 (7). The final Resources Committee decision on the land dispute could then have been appealed to the district court. 2 N.T.C. § 693 (b) (3) (repealed 1984).

The District 9 Grazing Committee failed to perform its duty according to law, and consequently, the Resources Committee never had the opportunity to decide the land dispute prior to appellant filing her suit. The appellant's only recourse was to file suit on November 10, 1983 using *Brewster* because the administrative proceeding was leading nowhere. When suit was filed, the district court obtained proper jurisdiction to hear appellant's case *de novo* and there was no need to refer the case to the District 9 Grazing Committee. Appellant had already made every attempt to exhaust administrative remedies without success. This would have been the procedure even if the Resources Committee's power to decide land disputes had remained intact.

The Resources Committee lost all jurisdiction to decide land disputes on March 14, 1984, although its authority to mediate in land disputes may have survived. *See* 3 N.T.C. § 878 (7) (1957) (cases not settled before the district grazing committee "are to be referred to the Central Grazing Committee . . . in an attempt to settle differences out of court."). The district court thus erred when it referred the case to the District 9 Grazing Committee on April 4, 1984, and to the Resources Committee on February 15, 1985 and March 27, 1987. Any decision made by the District 9 Grazing Committee on appellant's case is void because district grazing committees never had power to decide land disputes. *See* 3 N.T.C. § 878 (7) (1957). Any decision made by the Resources Committee on this case, including the September 9, 1988 decision, is likewise void because the Resources Committee lost all power to decide land disputes on March 14, 1984. For this reason, a purported land dispute decision made by the Resources Committee of the Navajo Tribal Council cannot be appealed to the courts. *Navajo Skill Center v. Benally*, 5 Nav. R. 93, is inapplicable to this case.

This case is another "too frequent example of the delays attendant to land disputes." *Brewster*, 1 Nav. R. at 129. If the district court, attorneys for the parties, and the District 9 Grazing Committee and the Resources Committee and their attorneys had been alert to changes in the law, this case would not have dragged on for want of a valid decision these past eight years. We repeat the teachings of *Brewster*: "Land is our people's life and heritage. Their concerns must be taken seriously and dealt with quickly. We know that our leaders will do the best they can once they realize the importance of prompt and clear action in these cases." 1 Nav. R. at 131. Finally, we suggest to the lawmaking body a need for an administrative body composed of non-elected officials which can efficiently and quickly decide these types of cases.

The decision of the district court dismissing the case for want of jurisdiction is reversed. The case is remanded to the district court with instructions to hear the land dispute on the merits as soon as possible.

Reversed and Remanded.